# Frank Daly v. Jennie Vida Melendy.

## [Filed September 22, 1891.]

1. **Witnesses:** Impeachment. Where it is sought to impeach a witness by proving, either by his own answer to a question put to him, or by calling other witnesses to swear that he has made statements out of court contrary to what he has testified at the trial, the witness's attention must be called to the statement which it is claimed he made out of court, and to the time, place, and other circumstances of his making it, and the statement must be contrary to what he has testified at the trial. (1 Greenl., 462.)

2. **A new trial** will not be granted in any civil action on the ground of the improper admission or rejection of evidence, unless in the opinion of the appellate court some substantial wrong or miscarriage has been thereby occasioned in the trial of the action.

3. **Leading Questions.** A question which suggests to the witness the answer desired, and which admits of an answer by a simple affirmative or negative when put to a witness upon his direct examination may be rejected as leading. (1 Greenl., Ev., sec. 434.)

4. **Bastardy:** Examination: Evidence. The examination provided for in section 1 of chapter 37, Compiled Statutes, is only of the complainant; and in a case where a defendant, having been arrested and brought before a justice of the peace on a charge of bastardy, was permitted to swear and examine a witness, in his defense, whose testimony was taken down in writing and afterwards offered in evidence upon the trial in the district court, *held*, that it was properly rejected.

5. **New Trial:** Remarks of Counsel. To authorize the appellate court to set aside a verdict and grant a new trial on account of statements made in summing up by counsel for the prevailing party, or the refusal of the court to strike out such statements and instruct counsel not to repeat them, the statements must have been of such a character as may reasonably be supposed to have influenced the jury. (See *Festner v. O. & S. W. R. R Co.*, 17 Neb., 280.)

6. **Instructions** given and those refused examined, and *held*, rightly given and refused.

7. **The evidence** considered, and *held*, to sustain the verdict.

ERROR to the district court for Antelope county. Tried below before POWERS, J.

*J. F. Boyd*, and *Allen, Robinson & Reed*, for plaintiff in error, cited: Remarks of counsel: *Cleveland Pa. Co. v. Banks*, 15 Neb., 22; *Festner v. R. Co.*, 17 Id., 283. Alibi: *McLain v. State*, 18 Id., 160; *State v. Chee Gong*, 19 Pac. Rep. [Ore.], 607.

*N. D. Jackson*, and *W. E. Pilling, contra*, cited: *Masters v. Marsh*, 19 Neb., 458; *Sang v. Beers*, 20 Id., 373; *Williams v. State*, 5 S. W. Rep. [Tex.], 659; *Miner v. Lorman*, 33 N. W. Rep. [Mich.], 867; *Huckshold v. R. Co.*, 2 S. W. Rep. [Mo.], 798.

COBB, CH. J.

This action was commenced before a justice of the peace of Antelope county by Jennie Vida Melendy, an unmarried woman of said county, against Frank Daly, by a complaint in writing made before the said justice in which she alleged that she is an unmarried woman, and that on the 22d day of January, 1887, she was delivered of a bastard child, and that the said Frank Daly is the father of said child. The said Frank Daly was arrested and brought before the said justice, whereupon the said Frank Daly made and filed an affidavit that he verily believed a fair and impartial hearing in said cause could not be had before the said justice of the peace on account of the bias and prejudice of said justice, and that Henry Farrell, justice of the peace of Clay Ridge precinct, county of Antelope, was the next nearest justice of the peace to whom the same objection did not apply. Thereupon the said justice ordered a change of the place of trial to said Henry Farrell, justice of the peace for Clay Ridge precinct, and transmitted the said complaint to said Henry Farrell, justice of the peace.

And thereupon, on the 29th day of March, 1887, the parties appeared before the said Henry Farrell, justice of the peace, and a trial and examination was had, and after various adjournments and the examination of the plaintiff, as well as sundry witnesses produced by her, and sundry witnesses produced by the defendant, the said justice adjudged and ordered that the accused enter into recognizance in the sum of one thousand dollars for his appearance at the next term of the district court to answer such accusation and abide the order of the court thereof, and that he enter into recognizance in the sum of one thousand dollars for such appearance.

After several adjournments, it appears by the record that on the 10th day of December, 1888, the said case came on for trial upon the complaint of the plaintiff, and the plea of not guilty entered by the defendant. He was tried by a jury with a verdict of guilty, and a motion for a new trial being overruled, judgment was entered for the plaintiff that the defendant is the reputed father of the said child, and that he stand charged with the maintenance thereof in the sum of $500, to be paid as follows: $50 upon the first day of January in each of the following years, to-wit: 1889 to 1898, both inclusive, together with costs, and was required to give security in the sum of $800 for the performance of said order, etc.

The cause was brought to this court on a petition in error containing ten assignments of error, which are too voluminous to admit of being set out here at length, but will be examined and considered.

The first error assigned is based upon the sustaining by the court of the objection by the plaintiff to a question put by the defendant to the witness, Mrs. Cynthia Melendy, upon her cross-examination. This witness, the mother of the plaintiff, having stated in her examination in chief that the defendant had been in the habit of coming to see her daughter Jennie during the spring of 1886, and being

asked by counsel for the plaintiff: Q. Do you remember the last time that he was there? she answered, A. About the first or second day of May; the first or second Sabbath, I cannot state certain which.

Upon her cross-examination by counsel for defendant she answered as follows:

Q. You don't remember whether it was the second Sunday in May?

A. Certainly, I remember very well the time.

Q. But you don't know whether it was the first or second Sunday?

A. No, sir.

Q. You don't remember whether it was the second Sunday in May positively?

A. Yes, sir, the second Sunday in May.

Q. Do you know whether the second day of May was Sunday or not?

A. Yes, sir.

Q. What makes you know that it was that time, Mrs. Melendy?

A. Because we were talking about planting corn.. We had our corn ready for planting.

Q. What would make you remember that it was the second day of May?

A. I know what time it was.

Q. You say that the second day of May was on Sunday?

A. I know that Sunday was the second day of May; yes, sir.

Q. Whether it was the first Sunday or the second Sunday in May that Frank was there you cannot tell?

A. No, sir.

Q. If it was the second Sunday in May you were talking about planting corn?

A. Yes, sir.

Q. Did you talk about it the second day of May or the second Sunday in May?

A. We talked about it when Frank was there the last time.

Q. Whenever he was there, whether it was the first or second Sunday in May, or the second day in May, whichever that might have been, you were talking about planting corn?

A. Yes, sir.

Q. That is as near as you can remember it?

A. Yes, sir.    *    *    *

Q. I will ask you, Mrs. Melendy, if on the preliminary trial before the magistrate, Mr. Ferrell, in this county on the 4th day of April, 1887, this question was not put to you and that you made the following answer thereto: Mrs. Melendy, why don't you remember definitely that it was either the first or second Sunday in May? To which you answered: I cannot tell, only that I don't remember. Did you not so swear at that time?

This question was objected to by the plaintiff as immaterial and not proper cross-examination, and the objection was sustained. The evident object and purpose of asking this question was to contradict the present evidence of the witness, by herself, in case she answered the question in the affirmative, or by calling other witnesses to testify to what she swore to before the magistrate, in case she answered in the negative. Let us suppose that she had been allowed to answer the question, and had answered in the affirmative. would such answer have contradicted her present evidence? She had not been asked on her present examination, "Why she did not remember definitely that it was on either the first or second Sunday in May," and of course, had not answered that question. But she had answered, as we have seen, that "whether it was the first Sunday or the second Sunday in May that Frank was there," she could not tell. Therefore, an affirmative answer to the question ruled out would not have contradicted her, nor tended to. Neither would a negative answer have lain a foundation for calling

other witnesses to contradict her, because such witnesses would not have been called to prove that she had made statements out of court contrary to what she had testified to at the trial. (See 1 Greenleaf on Ev. sec. 462; 7 Am. and Eng. Ency. of Law, 109.) The question was therefore immaterial, and the objection to it properly sustained. The first assignment of error must therefore be overruled.

The second assignment of error arises upon the sustaining by the court of the objection of the plaintiff to the question put to the witness Daniel Melendy on his cross-examination by counsel for the plaintiff in error, and, as plaintiff in error says, "the rejection of an offer to prove certain facts by said Daniel Melendy."

The witness, Daniel Melendy, having been examined as a witness on the part of the plaintiff, and being under cross-examination by counsel for the defendant, was asked several questions in reference to one Loran Ball, and having stated in answer thereto that Loran Ball was a young man not thirty years old, reputed to be a single man; that he resided about half a mile from the witness, father of the plaintiff, he was examined as follows:

Q. He was in the habit of coming over to your house very often?

A. Why, he was in the habit of being there once in a while.

Q. And he came in there and chatted with Jennie? (Ruled out on objection.)

Q. Don't you know that he waited on her once in a while?

A. No, I don't.

Q. Do you know whether he did or not?

A. I know that he did not.

Q. Do you mean to say that he did not come there to visit her on several occasions about that time?

A. No, sir; he did not.

Q. And had he not been in the habit of coming to your

place to visit her for a year or two about that time ? Which question was objected to by the plaintiff, as immaterial and no foundation laid, which objection was sustained by the court.

The defendant now offers to show by the witness on the stand upon cross-examination that for a year or so prior to this second day of May, 1886, the young man, Loran Ball, had been in the habit of visiting at the house of the witness where his daughter resided; which was objected to by the plaintiff as immaterial, and no foundation laid, which objection was sustained by the court.

The question ruled out by the court was inadmissible, as put upon cross-examination, it relating to a matter upon which the witness had not been examined in chief; and had it been objected to on that ground, the correctness of the order of the court sustaining the objection would not be doubted. The objection was, however, placed upon other and untenable ground, and had it been overruled, error would not have lain therefor had the verdict been the other way. Nevertheless, the question being inadmissible upon a sufficient ground, the ruling of it out on any ground is not reversible error.

The next witness placed upon the stand by the defendant in error was Loran Ball, the subject of the above question and offer. His examination in chief was very short, directed solely to the point of his having seen the plaintiff in error at the residence of the defendant in error on the evening of the second of May. He was then subjected to a lengthy and searching cross-examination on the part of the plaintiff in error, going over, and most thoroughly, the entire ground covered by the question and · the offer, from which it appears, so far as could be proved by the evidence of that witness, that he had never been a suitor of the defendant in error; had never visited her; had never sat up with her, and, in fine, that there was no truth in, nor foundation for, the evidence sought to be called out by

the question, or which could have been proved upon the offer. As applicable to this, I cite Stephen's Digest of the Law of Evidence as republished in the American and English Encyclopedia of Law, volume 7, page 111, section 6: "A new trial will not be granted in any civil action on the ground of the improper admission or rejection of evidence, unless, in the opinion of the court to which the application is made, some substantial wrong or miscarriage has been thereby occasioned in the trial of the action."

The witness Daniel Melendy, upon his examination in chief, had testified to no fact as to whether Loran Ball was or not acquainted with the plaintiff, whether he had or not ever been a visitor, or caller at the Melendy residence, nor whether he was at any time a suitor of, or had kept company with the plaintiff. Therefore, if it were true that the plaintiff and Loran Ball were acquainted with each other, that he was a suitor to her or a frequent visitor at her residence, such fact could be proved only by direct testimony and not by cross-examining a witness who had testified to nothing on the subject in his testimony in chief. Furthermore, had the defendant desired to prove any substantive fact by this witness, it was entirely competent to have called him after the plaintiff had closed her case. He, then being the defendant's witness, may have been interrogated as such, and had the question been objected to and ruled out, it would have been correct practice to make an offer of the evidence, and its rejection would have been error, but an offer of evidence to be given by a witness of the opposite party upon cross-examination, and without making him the witness of the party making the offer, would, as the writer believes, not be received by any trial court, nor its rejection disapproved elsewhere. The second exception must therefore be overruled.

The third assignment of error arises upon the sustaining by the court of the defendant in error's objection to a question put by plaintiff in error to the witness Martin

Daly. This witness, the father of the plaintiff in error, was placed upon the stand by the defendant and examined at considerable length, to the single point that the plaintiff in error was at his home and the home of the witness on the same evening at and about the same time as that testified to by the plaintiff and her witnesses as he having been at the Melendy residence, three miles away. He testified to this fact in answer to the questions of his son's counsel in almost every conceivable shape in which questions could be framed calling out such facts, and finally the question was put as follows: Q. Have you a distinct recollection of seeing him at home with the family that evening and of seeing him go to bed? which question was objected to by the plaintiff as leading and the objection sustained.

There are two usual tests applied to questions to ascertain whether they are leading or not. One is that a question which may be fully answered by yes or no is usually considered objectionable as leading. Second—When a question plainly indicates the way in which the counsel who asks it desires or expects his witness to answer it, it is usually deemed objectionable as leading. I think the question clearly objectionable as leading, and it certainly was so, as a repetition, in substance, of those which had gone before. This exception must also be overruled.

The fourth exception arises upon the sustaining by the court of the objection of the plaintiff to the offer on the part of the defendant, plaintiff in error, to introduce and read the evidence—the testimony of Mrs. Nellie Daly, which was given upon the preliminary examination of this case before the justice of the peace. I will only deem it necessary to say that the taking of the testimony of the witness, Mrs. Nellie Daly, upon the preliminary examination before the justice of the peace, being unauthorized by law, could not in any event be read upon the trial in the district court. Were this not the case, it would be sufficient to say that no evidence was offered either of the

death or the absence beyond seas of Mrs. Nellie Daly, and we are left to the wildest regions of conjecture for grounds upon which this evidence could be admitted. This exception must also be overruled.

The fifth point of error arises upon the overruling by the court of a motion of plaintiff in error to strike out certain remarks of Mr. Jackson, counsel for the defendant in error, in his closing remarks to the jury in summing up. It appears from the bill of exceptions that during the argument of the case to the jury by the plaintiff's counsel, Mr. Jackson, said counsel, made use of the following language:

"Counsel for the defendant says that the Daly people are honest people and truthful people; that they have that reputation in that community. If reputation would prove anything, I could come pretty near proving that the whole Daly family were fathers of bastard children." The de-defendant objects to the statement just made by the plaintiff's counsel, and moves the court to strike out the remarks and to instruct the counsel not to repeat the statement or to give the substance of it, because it is entirely outside any evidence given upon the trial. Motion overruled by the court, who said : "I think that it is perfectly proper for the counsel to state it. I don't understand that he referred to what has been proved, but to remarks that have been made by defendant's counsel in his argument to the jury."

Somewhat similar grounds for a new trial have often been presented to this and other appellate courts. It has generally been presented under the first or second heads of grounds for the granting of a new trial, as contained in section 314 of the Code, which are:

1. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial.

2. Misconduct of the jury or prevailing party.

The assignment in this case is somewhat broader, and may be considered as embracing both of said heads as well as the alleged error on the part of the court in refusing to strike out the remarks, and instruct the counsel not to repeat the statements or to give the substance of it. I remember but one case in this court where a judgment has been reversed in whole or in part for a cause of this character. I refer to the case of the *Cleveland Paper Co. v. Banks*, 15 Neb., 20, cited by counsel for plaintiff in error. In the opinion the court says:

"The rights of parties are to be determined from the evidence, and an attorney in arguing the case to a jury must confine the discussion of facts to those proved. If he can be permitted to make assertions of facts, or insinuations of the existence of facts, not supported by the proof, there is danger that the jury will lose sight of the issue or be influenced by misstatements to the prejudice of the other party. Where such statements are improperly made *prima facie* they are prejudicial, and may be sufficient to cause the reversal of the case. * * * In our opinion, therefore, the statement was so far prejudicial as to demand a new trial. The verdict is also against the clear weight of evidence. A clear preponderance of the evidence tends to show that the defendant did agree to pay for the paper, notwithstanding his deliberate denial of the same."

The same point arises in the case of *Festner v. O. & S. W. R. Co.*, 17 Neb., 280. In that case the court in the syllabus says: "An attorney will not be permitted in the argument of a case to the jury to make assertions or insinuations of the existence of facts not in evidence. If he do so the verdict may be set aside; but to authorize the setting aside of the verdict the statements must have been of such character as may reasonably be supposed to have influenced the jury."

In the case at bar, while I am far from approving either

the language of the counsel or the view taken of it by the trial court, I do not think that, testing it by the rule stated in the syllabus above cited, it presents sufficient cause for the reversal of the judgment and granting a new trial. The statement of counsel was not of any fact arising in the case; was not the statement of any evidence on either side, or of any principle of law claimed to be applicable thereto. It appears upon its face, as well as from the remarks of the court in denying the application of counsel for plaintiff in error, that the language was a part of an altercation or debate between counsel upon matters having little or no application to the business then in hand. It may fairly be presumed that counsel for the plaintiff in error went somewhat out of the way in the laudation of the family of his client, and while that cannot be claimed as a sufficient excuse for his opposing counsel replying in language probably still farther out of the way in deprecating them, from the language of the court, who is known to be a careful and a just man, it cannot be conceived that these remarks of counsel were entirely without provocation. Nor can it be conceived that the language of counsel on either side, either in praise on the one hand or of the censure upon the other, of persons not parties to the suit, could have had any great controlling weight with the jury. This point is therefore overruled.

No sixth point is cited in the petition in error. The seventh assignment of error arises upon the giving by the court of paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 of instructions to the jury as given by the court upon its own motion. These instructions are as follows:

1. The defendant is sued on the accusation of the plaintiff, Jennie Vida Melendy, who charges him with being the father of her illegitimate child.

2. To this accusation the defendant has entered the plea of not guilty.

3. The burden is upon the plaintiff to prove by a pre-

ponderance of the evidence that the plaintiff was, on or about the 22d day of January, 1887, delivered of a bastard child, as alleged, which is still alive, and that the defendant is the father of the same, before you should find for the plaintiff.

4. If you believe from the evidence that the defendant had sexual intercourse with the plaintiff, an unmarried woman, on the 2d day of May, 1886, as claimed by the plaintiff, and that as a result of such intercourse the said plaintiff became pregnant with a child which was afterwards born a bastard on or about the 22d of January, 1887, which child is still alive, then your verdict should be in favor of the plaintiff.

5. The defendant has interposed as a defense what is known in law as an *alibi;* that is, that the defendant was at another place at the time the sexual intercourse is alleged to have taken place between the plaintiff and defendant, so that the defendant could not have been guilty of the said acts of intercourse as charged.   It is incumbent upon the defendant to establish this defense by a preponderance of the evidence, that is, by the greater weight of evidence, before he is entitled to an acquittal on this ground.

6. And as bearing upon this defense, you should carefully consider all the evidence before you touching upon the question, and if you believe from such evidence that the defendant was at another place than that where the intercourse is alleged to have taken place at the time of such alleged intercourse, so that he could not have been guilty of the same, then you should acquit the defendant of such charge.

7. You are instructed that you are to judge of the credibility of witnesses that have been examined before you, and where witnesses have testified directly the opposite to each other, you should determine from the appearance of such witnesses while on the stand, their manner of testifying, their apparent candor and fairness, their interest in

the result of the litigation, and from all the other surrounding circumstances appearing on the trial which of the witnesses are the most worthy of credit, and to give credit accordingly.

8. And the conclusion you arrive at, the verdict in the case, must be rendered, not from the contentions of the counsel in the case, but from the evidence alone.    If you find for the defendant your verdict will be that of not guilty.

10.        *        *        *        *        *        *

11.        *        *        *        *        *        *

Numbers 8 and 9 of the instructions given by the court on its own motion, or a conglomeration of the two, are copied from the record.    Doubtless through a blunder of the person making the record from the originals, it is rendered unintelligible.

The argument of counsel in the brief is confined to two of the above paragraphs of instruction—the fifth and sixth. Counsel in the brief says : " That in the fifth paragraph of the court's charge to the jury, the jury was told that 'the defendant had interposed what is known as an *alibi*, and that it is incumbent upon the defendant to establish this d efense by a preponderance of the evidence,' and that this instruction is erroneous in the part last quoted; that the burden of proof may shift from the plaintiff to the defendant on the defense of an *alibi*, in the sense that some evidence should be introduced by the defendant tending to establish the defense, but still upon the whole case, the burden of proof continues with the plaintiff to overcome the *alibi* and all other defenses and establish her case.    If she fails to do so, the defendant should be acquitted." That which counsel contends for as what the court should have told the jury, or as the law applicable to this point, I conceive was what the court intended to do in this charge, and I think succeeded in doing to a reasonable degree of certainty.    This charge does not tell the jury that the defendant, having interposed an *alibi* as a defense, was re-

stricted to that defense and required to prove it by a preponderance of the evidence, but that in order to make that defense effective and be entitled to an acquittal on that ground, he must prove it by a preponderance of evidence. In other words, that if the defendant, notwithstanding all the direct evidence against him, is to be acquitted on the ground that he was not at the Melendy residence on the night of the 2d day of May, but was at his father's house during the whole of that evening and night, then that fact must be proven by a preponderance of evidence; in other words, by the evidence in the case; in the case of *Altschuler v. Algaza*, 16 Neb., 631, the court in the syllabus says: "The proceeding under the bastardy act is essentially a civil one, and a preponderance of the evidence is sufficient."

There is necessarily a difference in the application of the defense of *alibi* in a civil case, to that in which it is usually made in criminal cases. This arises out of a difference in the nature of the cases themselves. In a civil case, the party holding the affirmative is only bound to prove his case or cause of action by a preponderance of the evidence, while in a criminal case, the state must prove its case and every material allegation thereof to a degree of certainty which excludes a reasonable doubt. Therefore, even if it be conceded that the instructions complained of would have been erroneous in a criminal case, it does not necessarily follow that they were erroneous here. The case of *Ackerson v. The People*, 16 N. E. Rep., 847, was a prosecution for rape in the criminal court of Cook county, Illinois. Ackerson being convicted, took error to the supreme court of that state. The judgment was affirmed. The court in the syllabus says:

"Where an *alibi* is set up as a defense, it is not prejudicial error to charge that when the people make out such a case as would sustain a verdict of guilty, and the defendant offers evidence, the burden is on him to make out that

defense; and as to an *alibi* and all other like defenses, that tend merely to cast a reasonable doubt on the case made by the people, when the proof is in, then the primary question is (the whole evidence on both sides being considered), whether the defendant is guilty beyond a reasonable doubt; the law being that when the jury have considered all the evidence, as well that touching the *alibi* as the criminating evidence introduced by the prosecution; then if they have any reasonable doubt of the guilt of the accused they should acquit, otherwise not."

The case of *The People v. Lee Sare Bo*, 14 Pacific Reporter [Cal.], 310, was a prosecution for murder in the first degree in the criminal court of San Francisco. The defendant was convicted and took error to the supreme court of California. The court in the syllabus says:

" The defendant, in a prosecution for murder, attempted to set up an *alibi*. *Held*, That such a defense, as in the case of every defense resting on extrinsic facts not arising out of the *res gestæ*, must be proved by a preponderance of evidence."

The case of *The State v. Maher*, 37 N. W. Rep. [Ia.], 2, was a conviction for grand larceny in the district court of Polk county, Iowa. Upon error to the supreme court of that state the judgment was affirmed. I quote from the syllabus:

" The court in one instruction directed the jury in substance that the *alibi* relied upon as a defense must be established by a preponderance of evidence, and in another told them in effect that if upon the whole evidence, including that tending to establish the *alibi*, they entertained a reasonable doubt, they should acquit. *Held*, That these instructions were not contradictory, and the jury were required to find the *alibi* upon the preponderance of evidence, but if the evidence upon the defense, considered alone or in connection with all the other evidence, left a reasonable doubt in their minds, they could not convict."

The case of *The State v. Johnson*, 34 N. W. Rep. [Ia.], 177, is also a case from the supreme court of Iowa. The conviction was for murder in the first degree and was affirmed. The question of *alibi* arose somewhat indirectly. I quote from the syllabus:

"The accused testified that he was at his own home at the time of the murder. The court directed the jury to acquit if they found the *alibi* supported by a 'fair' preponderance of the evidence. *Held*, That the use of the qualifying epithet 'fair,' was not error."

The case of *State v. Rivers*, 27 N. W. Rep., 781, and *State v. Fry*, 25 Id., 868, both Iowa cases, are to the same effect.

Taking the fifth and sixth instructions of the court in the case at bar together, and testing them by the logic of the cases above cited, even although they are criminal cases, I think no error can be found in the charge. This assignment must also, therefore, be overruled.

The plaintiff in error asked the court to charge the jury as follows: "2. The presumption of the law is that the defendant is innocent of the charge made against him, and this presumption must be overcome by the plaintiff by a preponderance of the evidence, or the defendant must be acquitted," which was refused. The substance of this instruction had already been given by the court in its third charge upon its own motion, as above quoted. It is there expressly charged that "the burden is upon the plaintiff to prove by a preponderance of the evidence that the plaintiff was, on or about the 22d day of January, 1887, delivered of a bastard child as alleged, which is still alive, and that the defendant is the father of the same, before they could find for the plaintiff." If the instruction offered and refused contains any other element I am unable to see it.

Plaintiff also asked the court to give his fifth instruction, as follows: "The defense of *alibi*, that is, that the defendant was not present at the time and place it is claimed the sexual intercourse was had, may be made, and, when shown,

Daly v. Melendy.

it is a complete defense," which was refused.   The substance
of this instruction, and all of it, is contained in the sixth
instruction given by the court on its own motion.

The eighth assignment of error, as presented in the brief
of counsel, is, "that the verdict in the case is contrary to
the weight of the evidence, and for that reason should be
set aside."   I deem it unnecessary to recapitulate the evi-
dence further than to say that it is true that, while the
plaintiff testified to the act of intercourse between herself
and the defendant at the time and place stated, the defend-
ant testified that he never had sexual intercourse with the
plaintiff at any time, and again, that he did not have such
intercourse on the 2d day of May, 1886.   This presents
a case of contradictory testimony.   All of the other testi-
mony on the one side or the other is no more than corrob-
orating; that of the witnesses on the part of the plaintiff
corroborated her in so far as the presence of the defendant
at the time and place of the alleged intercourse is con-
cerned, and that of the witnesses for the defendant tending
to show that he was at another place at that time, and hence
that the alleged intercourse could not have taken place at
that time and place.   This testimony, taken altogether, pre-
sents a case peculiarly for the consideration and decision
of a jury.   The jury were, as I have before stated, in my
opinion, fairly instructed of the law applicable to the case,
and their finding is not only supported by the testimony,
but in my opinion is a reasonable one, and one which can-
not be disturbed according to the rules of law and pratice
in similar cases.   The judgment is therefore

AFFIRMED.

THE other judges concur.